I've been advised by the clerk that everyone who should be present is present, and so we will begin. We're going to reorder our calendar a little bit today and begin with the case of Dr. Lina Varughese v. Lento et al. Dr. Varughese, please. Hi. Thank you for having me. I'm the pro se plaintiff in this particular case. The defendants are actually Mount Sinai Medical Center and a number of other individual defendants. In any case, I'm here because the motion for summary judgment was decided against me by Judge McMahon, and I don't think it is appropriate what she did. I have submitted extensive arguments, both facts and law, based that I already submitted to the court. So I'm here because I want to know what the factual or legal issues are that would have this court rule against me. Could you point to – Judge McMahon issued a 129-page decision that was very thorough and went through the record at some length, and I wondered if you could identify exactly what evidence you rely on in your contention that you were discriminated against by Mount Sinai because of your Indian descent. Right. So I based that on the conversations or the comments that were made directed at me by my supervisors. What particular comments? I'm aware of some that Dr. Schiller made a couple of comments, maybe four over the course of four years, three or four years. But what comments in particular? Could you identify those? Well, I mean, there were derogatory comments made about India. You don't know what you – you know, the things you see in India or find in India. On numerous occasions where my colleagues actually pointed out to me that it was very racist. On another occasion, he said that there's something wrong with my DNA and that, you know, this is in comparison to my white colleagues who were acting erratically and unprofessionally at work. So I was singled out consistently with these – not only was I singled out, there were these comments that were also made while I was being singled out. And what about your contention that you were discriminated against because of your gender? Yes, because on multiple occasions, the person who was, you know, harassing me or targeting me was a male and white or allegedly white. I'm not – you know, I don't know. There's a contention about this point. But his last name is Mikesh, and, you know, he was targeting me. He targeted me multiple times, at least three or four times over a course of a period of a year. And he was not subjected to any sort of negative treatment. No –  Yes. I thought that he was required to have counseling and that he suffered some adverse consequences. No, there was absolutely no adverse – Excuse me, could I – he suffered some adverse consequences as a result of the altercation that you two had. No, he did not suffer any adverse consequences. In fact, he was emailing the supervisory staff and everybody else, making false allegations about me. And also, they covered up for him, meaning the entire hospital. Patrick Lento, the hospital's HR, the hospital's legal team, Marina Lavi. I'm sure this court might be familiar with her and her work, which is outrageous. So, you know, this was – I was targeted. He was not. He was not subjected to any written writing, reading a book, disciplinary process, where he was constantly haggled and harassed for, like, a year until his employment was terminated. No, he was, in fact, given a promotion, and he was given, like, awards at the end of the year. Is it correct that Dr. Kruti Maniyar, another woman of Indian descent, was promoted to chief resident? Right. She was the chief resident as well, and I never had any problems with her. We got along very well, in fact. And, in fact, when I looked through the record, it's very obvious that she was not included in a lot of everyday commentary and everyday functioning of the department, whereas Mikesh was. He was given more privileges than she was, even. And while she was the chief resident, she and I never had any problems. You're saying she was discriminated against, also. Well, based on my understanding of the record and what I saw from the e-mails and everything, it seemed like she was selectively included or not included, whereas Mikesh seemed extremely involved in the administrative role with the leadership of the department, which was Schiller, Lento, and then the new people came in, which was Cordon Cardo, Adolfo Ferpo, and so on. Your contention is that the district court was clearly erroneous in its decision, that there were no disputed issues of fact, and her comments on the reasons offered by Mount Sinai for the decisions that it made, you would say those are false, is that right? Right. I do think there are a lot of disputes of fact. I think the facts are so overwhelming in my favor, that this case should have been ruled in my favor or settled a long time ago. But I have a defense attorney who is . . . I don't know what is going on in his head, I cannot, but he is an unreasonable human being, and so is the defendant. Mount Sinai Medical Center is not a very reasonable defendant. What we need to do here is focus on what the record is about the facts and not about individuals. So you red light us on. We'll hear from counsel for a moment of response. Thank you very much, Dr. Varughese. Good morning. My name is Kevin Ashby. I'm Assistant General Counsel for the Mount Sinai Health System, Defendant Apley. We're prepared to rest on our written submissions, but I just wanted to make myself available in the event that the panel had any questions for us. I think we're all set then. Great. Thank you very much. Thank you very much. Thank you. We'll take the matter under advisement, and we'll get you a decision in due course.